WILLIAM PIERCE, Appellant, v. ALBERT CALDWELL et al.,
Appellees.

PARTNERSHIP:    Settlement and Accounting—Wrongful Act of
Trustee in Delivering Property to Partner—Burden of Proof.  A
partner who seeks to hold a trustee of the partnership property
liable for wrongfully turning over partnership funds to an-
other partner must first show, (a) that the funds so turned
over were not used by'the receiving partner in the payment of
partnership obligations, and (b) that the interest of the receiv-
ing partner in the partnership was not such as to justify such
individual appropriation.

*Appeal from Crawford District Court.—E. G. ALBERT,*
Judge.

WEDNESDAY, APRIL 4, 1917.

SUIT in equity by one partner against the other for a
partnership accounting and for a dissolution of the part-
nership.   Third parties are made defendants as alleged cus-
todians of the partnership funds, or as parties having
wrongfully appropriated such funds to the discharge of the
individual debts of one of the partners.   There was a de-
cree dismissing the petition, and the plaintiff appeals.—*Af-
firmed.*

*Sims & Kuehnle,* for appellant.

*Conner & Powers,* for appellees.

EVANS, J.—The story of the case is
somewhat complicated, and the controversy
is principally one of fact.  The plaintiff,
Pierce, and the defendant Caldwell were
partners.  The defendant E. J. Peters was
the cashier of the Farmers' Bank, and is al-
leged to have wrongfully appropriated some of the partner-
ship funds to the payment of the individual debts of Cald-
well.  The interveners, First National Bank of Chadwick,

PARTNERSHIP:
settlement and
accounting:
wrongful act
of trustee in
delivering
property to
partner: bur-
den of proof.

Illinois, and Harry Traum, were mortgage creditors of the partnership. The interveners have not appealed.

The partnership was formed in the spring of 1914. Pursuant thereto, the parties farmed a rented farm for that season. In the meantime, Caldwell became the son-in-law of Pierce, and the two families lived together upon the rented farm. At the time of forming the partnership, the larger part of the personal property which was to be used upon the farm was owned by Pierce. This property was encumbered by a mortgage of $1,675, held by the interveners in this case. It was agreed between the parties to the partnership that Caldwell should pay upon this mortgage the sum of $1,000, and that by such payment the parties should become equal partners in the property theretofore owned by them individually. The agreement by Caldwell to pay the $1,000 was not performed. Later, an extension of time was obtained on the $1,675 mortgage, and a new mortgage was given on all the partnership property. This mortgage and the note which it secured were both signed by both partners, and the debt was thereafter treated as a partnership debt. In this transaction, the defendant E. J. Peters represented the Illinois creditors, and the new note and mortgage were left in his hands for collection. In the latter end of the year, the mortgage was pressed for collection. The partnership had a large quantity of corn to be sold. This was subject to the lien for rent, which amounted to $1,293, and was held for collection at another bank in the same town. An arrangement was entered into between Peters and Traum on the one hand, and the members of the partnership on the other, whereby it was agreed that all the proceeds of corn to be sold should, after the payment of rent, be applied to the payment of the mortgage, and that, if thereafter any unpaid balance remained, then sufficient of the partnership property should be sold, and the proceeds applied in payment of such balance. It was fur-

ther agreed that Caldwell should have special charge of the performance of this agreement, and that for such purpose Pierce should turn over to him all the partnership property until the agreement should be performed. Pursuant thereto, Peters prepared and Pierce executed a bill of sale of all the partnership property to Caldwell. The corn being sold, the purchaser thereof paid in the full proceeds to the other bank, where the lease was held for collection of rent. Out of these proceeds, there was a balance of $224 over and above the amount of the rent. For such balance such bank drew a check to the order of the Farmers' Bank (of which E. J. Peters was cashier), and delivered the same to Peters. Peters did not apply this sum upon the mortgage, but placed the same to the credit of Caldwell. Later, a public sale was held of the partnership property, and the proceeds thereof were all paid to Peters. Of these net proceeds, Peters applied upon the mortgage $1,288, and placed $120, being the proceeds of sale of certain hay, to the credit of Caldwell. The sums so placed to the credit of Caldwell were all checked out by him prior to the bringing of this suit. The controversy between the parties has concentrated mainly upon the two items here mentioned as having been placed to the credit of Caldwell. On the trial of the case, Caldwell's testimony was in harmony with that of the plaintiff and was hostile to the other defendants. It is the contention for the plaintiff that Peters ought to have applied the two items of $224 and $120 upon the mortgage. To this contention, the defendant Peters answers that he knew nothing about their arrangements between themselves, except what appeared in their papers; and that he acted upon the direction and request of Caldwell, who was clothed with full authority to bind the partnership. Peters undoubtedly knew the purpose for which the bill of sale was made. Under that arrangement, the property was set aside to the payment of this particular mortgage. The bill

of sale was intended to confer authority upon Caldwell for that purpose and nothing else. We think it follows that it was the duty of Peters in the first instance to have applied the sums stated upon the mortgage. His duty in this respect was emphasized by the fact that he held the mortgage for collection, and it was his duty to his principal, as well as to the partnership, to so apply such funds. Subsequent to this time, however, the balance due on the mortgage was largely paid, leaving a final balance of only $100. The interveners, therefore, could not recover more than such final balance due. They did not appeal from the order of dismissal of the petition. They are not here, therefore, claiming further relief. So far as the partnership itself is concerned, if it got the benefit of the funds which ought to have been applied upon the mortgage, it is in no position to complain.

This brings us to the question of what right the plaintiff has, as one of the partners, to complain of the use which was actually made of such funds. It is urged by the defendants that one partner cannot sue a third party for a partnership debt. Conceding the legal proposition, it does not meet the situation. We think it clear that the plaintiff, as one of the partners, could have insisted upon an accounting, and that the funds in question could have been deemed in such accounting as partnership property, if they still remained in the hands of the defendant Peters, or if they had been wrongfully appropriated to the payment of the individual debts of Caldwell. On the other hand, the business of the partnership was necessarily done by the individual members thereof, and, in the transaction of such partnership business, the act of one partner is as binding as that of the other. If, notwithstanding the failure of Peters to apply the funds in question upon the mortgage, Caldwell afterwards used the money in discharging partnership obligations, his act would be as binding upon the

partnership as though it had been done by Pierce. Furthermore, if, upon an accounting, it should be found that, after the payment of partnership debts, a balance should be found in favor of Caldwell greater than the amount of the funds alleged to have been misappropriated, this of itself would leave the plaintiff without right to complain. The right of the plaintiff in such an action as this is to insist that the partnership property shall be applied in the first instance to the payment of debts and to the payment of advancements by the respective partners and to a proper distribution of the balance. While the action, in form, was one for accounting, no evidence was introduced on either side upon which an accounting could be had. No evidence was offered of the assets or of the indebtedness of the partnership, nor of advancements of either partner. There is no evidence upon which a balance could be struck, nor from which it could be ascertained whether, under any circumstances, anything could be due to the plaintiff or to the creditors of the firm. Peters having failed to apply the funds in question upon the mortgage, the partnership had a right to withdraw it or to use it to other ends. As a member of the partnership, Caldwell had a right to so use it for partnership purposes. The evidence does not disclose that he did not use it for partnership purposes. It appears inferentially that some of it was used in paying indebtedness incurred by him at the bank. But it appears quite as inferentially that such indebtedness was incurred on behalf of the partnership. We think the burden was upon the plaintiff to show that it was not in fact so used. Unless there was misappropriation by Caldwell, there could be no liability of Peters for paying the money over to him or for using it according to his direction. If it could be said that there is sufficient evidence to show that he used it for his own individual debts, the burden would still rest

upon the plaintiff to show that, upon an accounting, there was no sufficient balance due him to warrant such appropriation by him. The use of partnership funds by a part-- ner for his private use is not necessarily a misappropriation. If his interest in the partnership is such that the amount thus taken in good faith can be charged to his account without prejudice to his partners or to the creditors of the firm, no wrong is perpetrated. In the case before us, it might fairly be inferred that this partnership was in very straitened circumstances, and probably insolvent. In that event, the plaintiff would, of course, be entitled to demand that the assets of the partnership should be applied to the payment of its debts. But this would not entitle him to collect funds which had already been applied to the payment of such debts.

As already indicated, we have no occasion to deal with the rights of the interveners. They have not appealed. We are clear that the evidence does not show that the plaintiff has suffered any wrong. The order of the trial court must, therefore, be—*Affirmed.*

GAYNOR, C. J., LADD and SALINGER, JJ., concur.